**CASE NO. 21-4634**

# IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## FOR THE FOURTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

XAVIER HOWELL,
a/k/a X, a/k/a Xavier Allyson Howell,

*Defendant - Appellant,*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NORFOLK

---

**OPENING BRIEF OF APPELLANT**

---

Jonathan P. Sheldon
SHELDON & FLOOD, PLC
10621 Jones Street
No. 301-A
Fairfax, VA 22030
703-691-8410
JSheldon@sfhdefense.com

*Counsel for Appellant*

# TABLE OF CONTENTS

P<small>AGE</small>

Table of Authorities ................................................................ ii

Jurisdictional Statement ...........................................................1

Statement of Issue ..................................................................1

Statement of the Case .............................................................1

Summary of Argument ...........................................................8

Argument.............................................................................8

Conclusion .........................................................................17

# TABLE OF AUTHORITIES

## CASES

*Terry v. Ohio,* 392 U.S. 1 (1968) .................................................................8

*United States v. Black*, 707 F.3d 531(4th Cir. 2013) ........................ 9, 12, 13

*United States v. Brinkley*, 980 F.3d 377 (4th Cir. 2020) ..............................8

*United States v. Drakeford,* 992 F.3d 255 (4th Cir. 2021) ...............8, 9, 11

*United States v. Foster*, 634 F.3d 243 (4th Cir. 2011) ........................11, 13

*United States v. Foster,* 824 F.3d 84 (4th Cir. 2016)....................................9

*United States v. Harris,* 39 F.3d 1262 (4th Cir. 1994) ................................9

*United States v. Laughrin,* 438 F.3d 1245 (10th Cir. 2006) .......................11

*United States v. Massenburg,* 654 F.3d 480 (4th Cir. 2011) ...............12, 13

*United States v. Powell,* 666 F.3d 180 (4th Cir. 2011)................................11

*United States v. Williams,* 808 F.3d 238 (4th Cir. 2015).............................12

## STATUTES & CODES

18 U.S.C. § 2 ..................................................................................................1

18 U.S.C. § 1956(h) ........................................................................................7

21 U.S.C. § 841(a)(1)......................................................................................1

21 U.S.C. § 841(b)(1)......................................................................................1

21 U.S.C. § 846 ...............................................................................................1

28 U.S.C. § 1291 .............................................................................................1

## CONSTITUTION

U.S. Const. amend. IV ....................................................................................8

## JURISDICTIONAL STATEMENT

On November 12, 2021, Howell filed a timely notice of appeal from the final judgment and sentence of the district court. JA 176 (references to "JA" are to the sequentially-paginated Joint Appendix being filed concurrently with Howell's opening brief). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUE

Whether the district court erred in denying Howell's motion to suppress evidence based on an unconstitutional detention and search under *Terry v. Ohio*.

## STATEMENT OF THE CASE

On February 5, 2020, Howell was indicted for one count of conspiracy and two counts of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) & 841(b)(1) and 18 U.S.C. § 2. JA 12. On June 30, 2020, Howell filed a motion to suppress the fruits of the September 27, 2019, police stop, detention and search, which provided the evidence that was the basis for all of Howell's convictions. JA 21. The Government opposed the motion to suppress. JA 28.

**The September 4, 2020, evidentiary hearing on the motion to suppress**

*An informant's tip about a specific person — not Howell*

Adam Beha, a detective with the Chesapeake police department, testified that on September 26, 2019, he and others were investigating a tip from a confidential informant that a specific target with a specific name, not Howell, was "trafficking" a significant amount of drugs. JA 64, 107-08. The informant was reliable because he provided information in the past that was independently corroborated and led to convictions. JA 65. The target would be staying at the Aloft hotel in Chesapeake, and driving a "dark-colored or black sports utility vehicle with out-of-state tags and would likely be accompanied by or the vehicle driven by" a female. JA 65. The vehicle would be from a Northern state and other drug dealers might be at the hotel.

Beha claimed that it was very common for drug traffickers from outside the locality to use rental cars. JA 66. Drug traffickers often registered in hotels under another person's name to avoid detection. Drug traffickers like the Aloft hotel because it has a common area, indoor and outdoor area, pool tables, and a bar. JA 67. Still, "obviously" the majority of Aloft hotel guests are not involved in drug activity. JA 108.

Based on their informant's tip Beha went to the hotel the next morning, September 27, to conduct surveillance, but was unable to find a vehicle matching

the description. JA 68. There was no suspicious drug activity. JA 94. They checked the hotel registry for the target they were looking for and names that they "already knew" based on their "experience in the area" but did not find the target. JA 69.

### Howell registered as a hotel guest

Detectives found in the registry two names that they recognized, one of which was Howell. JA 69. Beha knew of Howell because five years ago Beha worked for a task force where a controlled buy of cocaine was done "from a business" and Howell was the "director" of that business. JA 69-70. No buys were made from Howell and no warrants were issued for him as a result of that investigation. JA 91. Beha also learned at that time that Howell had previously been arrested over ten years earlier in 2008 for possession with intent to distribute. JA 70, 92. In the course of that investigation, about four years ago, at least two informants claimed that Howell was selling controlled substances, JA 72, but again no buys were made, and no warrants issued, or arrests made. JA 92.

Beha knew that Howell lived out of state, was from the Tidewater area and had family in the area, including two sisters. JA 95, 108. Beha knew from social media that Howell had visited the area several times and that he was involved with music as a promoter. JA 95.

### *The unconfirmed NCIC hit from Georgia*

Beha ran a "NCIC/VCIN" on Howell at about 9:59 a.m. on September 27 and found a May 2018 "caution warrant . . . possible outstanding warrant" from Georgia for a failure to appear. JA 45, 74. Although the document stated to "CONFIRM THAT WANT IS STILL OUTSTANDING" and "NOTIFY . . . SHERIFF'S OFFICE OF CRAWFORDVILLE, GEORGIA," Beha did neither because of "Chesapeake Police policy."[1] JA 76. Other databases Beha looked at did not contain this warrant information. JA 97-98. Despite lengthy questioning by the Government, defense counsel, and the court, Beha was unable to clearly explain how department policy prevented him and his team from checking on the status of the warrant. JA 99-103, 110-12.

The reason for the policy of not calling to verify a warrant was to avoid the "waste of resources." JA 103. Beha could not explain how a phone call to confirm a warrant used less resources than assembling a team to detain a suspect. JA 103-04.

### *Police detain Howell and delay him to run a K-9 around the car*

Beha planned to detain Howell so that morning contacted officer Byrd and told him to be prepared. A couple of hours later, at about noon, Beha observed

---

[1] It turned out that with little effort it was confirmed that the Georgia warrant only authorized Howell's detention within the state of Georgia for his alleged failure to appear.

Howell arrive in a black rental car with Georgia license plates and go inside the hotel for about ten minutes.[2] JA 84. Howell checked out of the hotel, went outside and placed a Puma brand gym bag in the rear of the car. JA 50. A female with a baby was with Howell as he left, and the law enforcement team followed them as Howell drove. JA 84. Howell drove in an "overly cautious manner," he was "consistently using his turn signal" and driving "five to ten miles below the speed limit." JA 84. Howell did not break any traffic laws. JA 85. Beha admitted that the cautious driving "doesn't mean a lot," but claimed he decided to pull the vehicle over because of the "totality of the circumstances." JA 85.

Officer Byrd conducted the traffic stop of Howell at the behest of the investigation team, which had alerted him to be prepared to stop Howell about two hours before. JA 112-14, 120-21. Byrd had been in contact with the team several times and had been told about the "possible warrant." JA 121-22. Byrd could have confirmed the warrant at any time with the right information. JA 123. Howell never committed a traffic infraction, so as a ruse Byrd told Howell that the license plates did not match the registration of the car. JA 115, 124. Byrd ran Howell's information and discovered that while Howell had a warrant it was non-extraditable. JA 115-16. Byrd then confirmed with dispatch, even though he's never had a warrant that is extraditable. JA 116-18. It took ten minutes for dispatch

---

[2] After arresting Howell, Beha confirmed it was a rental car by completing a "VCIN" inquiry. JA 107.

to confirm that it was a non-extraditable warrant. JA 119. Meanwhile, Detective Rombs arrived with a K-9 to sniff for drugs approximately five minutes after the stop by Byrd and after Byrd determined the warrant was non-extraditable. JA 119. Byrd did not participate in the search but knew when he stopped the car that it would be for a drug dog search. JA 119-20. After Byrd determined that the warrant was not extraditable and before the search, Rombs told Byrd to detain Howell because of the warrant. JA 126. At that point Byrd asked Howell to step out of the car. JA 127. Byrd continued to have dispatch confirm that the warrant was not extraditable.

Detective Rombs asked the female to exit the car with the baby and deployed his K-9 to sniff the car about five minutes after he arrived on scene (ten-eleven minutes after the stop). JA 133, 135. When his dog alerted, Rombs searched the car and found methamphetamine, cash, cell phones, mail and other contraband that both led the government to other incriminating evidence and witnesses and was used at trial to convict Howell. JA 136.

### The District Court's denial of Howell's motion to suppress

On September 30, 2020, the district court filed an order and opinion denying Howell's motion to suppress. The court did not consider the warrant, but otherwise- citing the totality of the circumstances- largely relied on the tip from the confidential informant. JA 149, 159. Howell filed a motion for reconsideration

6

arguing that because the confidential informant's information was about a different person altogether, the court should not rely on that information. JA 160. The court denied the motion. JA 163.

The Government filed a superseding indictment adding a fourth count of money laundering pursuant to 18 U.S.C. § 1956(h). JA 164. Howell was tried from July 12-14, 2021, JA 8, 176-686, and the court found him guilty of all counts. JA 9 (Dkt. 181).

To convict Howell the Government relied upon the fruits of the detention and search of Howell and his vehicle. JA 214 & Exh. 200 (photo of the inside of the car); Exh. 202 (picture of package of methamphetamine from the car); JA 227 & Exh. 201 (photo of methamphetamine from the car); JA 219 (the mail in the diaper bag in the car had the address of apartment 412 in 117 Gateway Court where more contraband was found); JA 228-29 & Exh. 100 (methamphetamine seized from car) & JA 229 (Howell's renewed objection per the suppression motion). The stop and seizure led to Kevin Howard and Laquisha McFrazier whose testimonies were a prerequisite for the conspiracy and money laundering counts. JA 383-442; 517-542.

On November 12, 2021, Howell filed a timely notice of appeal. JA 687. On November 15, 2021, the court entered its judgment and sentenced Howell to 360 months imprisonment in total. JA 179.

## SUMMARY OF ARGUMENT

The district court erred in denying Howell's motion to suppress evidence under the Fourth Amendment because the Government failed to show that police had reasonable suspicion to stop Howell in the first place and, even if it had, his detention was unreasonably prolonged past its initial purpose.

## ARGUMENT

### A.    Standard of review.

This court reviews "'the district court's legal conclusions – including determinations of reasonable suspicion and probable cause – de novo, and its factual findings for clear error, construing the facts in the Government's favor.'" *United States v. Drakeford*, 992 F.3d 255, 262 (4th Cir. 2021) (quoting *United States v. Brinkley*, 980 F.3d 377, 383 (4th Cir. 2020)).

### B. Relevant legal principals

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. For over 50 years it has been clear that a police officer may conduct a brief investigatory stop with reasonable suspicion, but to do so he must "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion." *Drakeford*, 992 F.3d at 262 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "The level of

8

suspicion must be a 'particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *United States v. Black*, 707 F.3d 531, 539 (4th Cir. 2013)).

As most detectives are able to state during evidentiary hearings, courts look to the "totality of the circumstances." *Id.* at 263. While otherwise innocent factors taken together can amount to reasonable suspicion, additional facts might then dispel reasonable suspicion. *Id.* Courts have long been "skeptical of Government attempts to spin . . . largely mundane acts into a web of deception." *Id.* (quoting *United States v. Foster*, 824 F.3d 84, 89 (4th Cir. 2016)).

### C.    The Government did not have reasonable suspicion and the stop was illegally prolonged.

It is clear that an informant's reliable tip of criminal activity by a target is sufficient for reasonable suspicion. *United States v. Harris,* 39 F.3d 1262, 1269 (4th Cir. 1994). But in this case, like in *Drakeford*, 992 F.3d at 263, the officer's testimony on the reliability of the informant was scant. Further, at the time the Government decided to detain Howell they knew that their informant was incorrect, and that his tip was wrong, because the specific target they were looking for was not at the Aloft hotel as the informant claimed. There was no suspicious drug activity observed at the hotel, a hotel where obviously the vast majority of customers were not involved in drug activity. So, the informant's tip was not reliable, he was "absolutely off the money in this particular case." JA 141 (district

9

court describing informant's reliability). In any event, this was not a case in which the informant got the details of the tip correct but just got the name of the target wrong. The informant was talking about a specific person known to law enforcement: a different person altogether from Howell. This person either was not at the Aloft hotel, or the detectives just did not see him. Therefore, the informant's further information regarding the target is irrelevant as applied to Howell. There is no evidence in the record to suggest that the informant intended to refer to Howell but just got his name wrong. This was not even an argument advanced by the Government at the hearing. JA 140-41.

The detectives stated that they knew that drug traffickers often registered in hotels under other people's names to avoid detection, but Howell did not do that; he registered under his own name. The detectives knew Howell was from the Tidewater area and had family in the area (including two sisters), but had moved out of state and travelled as a music promoter, including back to Tidewater. They observed Howell check out of the hotel, put his luggage in plain view in the car, and drive away in a rental car with southern license plates in broad daylight with his sister and her baby. JA 133. Even if the informant's tip had been about Howell, it was mostly wrong.

The detectives knew that Howell's only drug-related arrest and conviction was over ten years ago, and that Howell was not currently under investigation.

Despite other drug investigations and informant tips from several years ago,

Howell was never arrested or charged with any crimes since that old conviction.

*See Drakeford*, 992 F.3d at 258 (no reasonable suspicion found considering, *inter*

*alia*, that Drakeford had been under investigation for some time and Drakeford had

been arrested several times for drugs, but not convicted). Despite Howell's one

criminal conviction, the subsequent years-old investigation suggested that Howell

had *not* returned to criminal activity. A "criminal record is not, standing alone,

sufficient to create reasonable suspicion." *United States v. Foster*, 634 F.3d 243,

246-47 (4th Cir. 2011).

> If the law were otherwise, any person with any sort of criminal record
> — or even worse, a person with arrests but no convictions — could be
> subjected to [an] investigative stop by a law enforcement officer at
> any time without the need for any other justification at all. To find
> reasonable suspicion in this case could violate a basic precept that
> law-enforcement officers not disturb a free person's liberty solely
> because of a criminal record. Under the Fourth Amendment our
> society does not allow police officers to "round up the usual suspects."

*United States v. Powell*, 666 F.3d 180, 188 (4th Cir. 2011) (quoting *United States*

*v. Laughrin*, 438 F.3d 1245, 1247 (10th Cir. 2006)).

The only information added to Howell's past that still stood – that could

conceivably be considered as both relevant and suspicious (by the detective's

labeling as suspicious) at the time law enforcement detained Howell was that

Howell was driving a rental car and staying at the Aloft hotel. This Court has

11

previously warned against relying on such mundane facts. *United States v. Massenburg*, 654 F.3d 480, 482 (4th Cir. 2011). Virtually everyone from out-of-town drives rental cars and the detectives knew Howell was from out of town. The use of a rental car is of "minimal value" to the reasonable suspicion evaluation because the "overwhelming majority of rental car drivers . . . are innocent travelers with entirely legitimate purposes." *United States v. Williams*, 808 F.3d 238, 247 (4th Cir. 2015).

In addition, the detective testified that the reason the use of a rental car was suspicious is because the driver's identity is harder to determine from running the license plate,[3] but their theory of Howell trying to hide his identity was already proved wrong by Howell registering in the hotel under his own name. Finally, the Government explained that the Aloft hotel was favored by drug dealers for three characteristics that exist at virtually every hotel: indoor/outdoor space, common areas and a bar.[4] In any event presence in a high crime area is too generic to amount to reasonable suspicion. *See United States v. Black*, 707 F.3d 531, 534 (4th Cir. 2013) ("Though a relevant consideration, presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable,

---

[3] This theory is dubious at best. Running a license plate of any car does not inform law enforcement of the identity of the driver, but the registered owner instead. For a rental car, to determine the identity of the renter involves a simple phone call or visit to the rental office. There was no allegation that Howell rented the car under someone else's name.

[4] Howell is unaware of how many hotels have pool tables.

12

particularized suspicion that the person is committing a crime."); *see also United States v. Massenburg*, 654 F.3d 480, 482 (4th Cir. 2011). Furthermore, the Government conceded that most guests are obviously not involved in drugs. In short, their informant was proven wrong and scant suspicion remained; what the Government learned about Howell on the morning of September 27 should have *dispelled* them of any suspicion that they did have. Howell was not hiding his identity; he was traveling with luggage and his sister and her baby in plain view in broad daylight, and his last arrest and only criminal conviction was over ten years ago. Under the Government's interpretation of *Terry v. Ohio*, every Aloft guest who has a criminal conviction and drives a rental car may be detained and searched.

An "officer and the Government must do more than simply label a behavior as 'suspicious' to make it so.'" *Foster*, 634 F.3d at 248. The Government cannot meet its "*Terry* burden by patching together a set of innocent, suspicion-free facts, which cannot rationally be relied on to establish reasonable suspicion." *United States v. Black*, 707 F.3d 531, 539 (4th Cir. 2013).

### *The Georgia warrant did not provide reasonable suspicion to detain Howell*

The NCIC information on its face in all-caps told law enforcement that it should not be relied upon: "CONFIRM THAT WANT IS STILL OUTSTANDING" and "NOTIFY . . . SHERIFF'S OFFICE OF

13

CRAWFORDVILLE, GEORGIA." The detective and the uniformed police had multiple opportunities over several hours to make the phone call and confirm, yet they failed to do so. Despite the fact that the detective has known of Howell for years and had his date of birth and social security number, he did not check the warrant because of a policy that he was unable to articulate. The officer who was tasked with detaining Howell and had been in touch with the detective numerous times that morning also could have checked the warrant; he had plenty of time to do so and never claimed a policy prevented him. In fact, Officer Byrd ran Howell's information in minutes and discovered that while Howell had a warrant it was non-extraditable *before* the K-9 search. If the Government had reasonable suspicion based on the warrant, at that point it evaporated, and they should have released Howell. His further detention solely for the purpose of a K-9 search was unreasonable and a violation of the Fourth Amendment.

The fact that the Government waited until they detained Howell before confirming the warrant was non-extraditable and still detained him, confirms that the reliance on the warrant and the failure to check it until after detaining Howell was simply a pre-textual strategy to hold Howell.

### D. The district court erred

The district court denied Howell's motion to suppress. JA 153 & n.2. The district court correctly gave no credence to Howell's use of a rental car and

luggage, staying at a hotel, or cautious driving. JA 153. But the court made a crucial mistake when it found reasonable suspicion because it credited and relied on the informant's tip regarding "a suspected drug trafficker" who would be driving a black rental car with out of state plates and a woman would accompany the suspect at the Aloft hotel. JA 154. This was a mistake because the confidential informant did not say some unidentified target would have these characteristics, but a *specific, named target known to the police*. That target never showed up. It was an obvious and common coincidence that Howell had some traits in common with the specific target, but it provided no evidence toward reasonable suspicion because it is a red herring — the Government had no information about anyone other than their specific target. Further, the informant was incorrect about the specific target being at the Aloft hotel and the general drug activity. The informant was wrong that a female would be driving the car, wrong that the plates of the car would be from the North, and wrong about the occupants of the car (the baby) all for the same reason — he was not referring to Howell.

There was no evidence that, as the district court said, JA 155, the drug informant simply got the name of the target wrong. The Government addressed this at the hearing and conceded that the informant's tips were about a specific person and not Howell. JA 140-41. That is, the Government never argued that the informant just got the name of the target wrong, the Government instead relied on

their knowledge of Howell and the three remaining facts: that the informant said there would be other drug dealers present, drug dealers use rental cars, and drug dealers like the Aloft hotel. JA 141. But the district court clearly did not believe that the erroneous informant's remaining general allegation about drug activity and the innocuous remaining facts were sufficient. JA 140 & 141.

The district court acknowledged that Howell's past drug conviction and law enforcement's past investigation of Howell was not enough for reasonable suspicion, but did think it added to the analysis. JA 156. The district court further erred by failing to consider at all multiple facts that dispelled reasonable suspicion: the fact that Howell's conviction was over ten years old and that Howell was not *under* investigation; he had been investigated over four years ago, the investigation was over, and had resulted in no arrest or charges. The court also thought Howell's presence at a hotel known for drug trafficking supported reasonable suspicion. However, the detective's explanation for why the hotel was known for drug trafficking was specious. Beha's observations showed no drug trafficking, and Howell registered in the hotel under his own name – factors that the court failed to consider that weighed against reasonable suspicion. Finally, the district court failed to consider that the Government knew of Howell's travels and his sister.

The court also erred in finding that the search was not delayed, because the court failed to consider that Officer Byrd had already determined that the warrant was non-extraditable.

Howell would not have been convicted of any of the charges if his motion to suppress had been granted. At trial the Government relied on the drugs, money, cell phones and other contraband, as well as evidence found as a result of that evidence, to obtain convictions on all four counts. This court should reverse the erroneous ruling of the trial court and grant Howell's motion to suppress, overturn his conviction and direct the district court to dismiss the indictments.

## CONCLUSION

For the foregoing reasons, Appellant Xavier Howell requests that this Court reverse the judgment and order of the district court and remand the case to the district court with instructions to dismiss the indictments or in the alternative to grant him a new trial.

Howell requests the opportunity to present oral argument before the Court on the issues in his brief.

17

Respectfully submitted January 31, 2022,


/s/ Jonathan Sheldon
Jonathan P. Sheldon, VSB No. 66726
*Counsel for Xavier Howell*
Sheldon & Flood, P.L.C.
10621 Jones Street, #301A
Fairfax, Virginia 22030-5165
Tel. (703) 691-8410
Fax (703) 251-0610
E-mail: JSheldon@SFHdefense.com