CASE NO. 21-4634

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

XAVIER HOWELL,
a/k/a X, a/k/a Xavier Allyson Howell,

*Defendant - Appellant,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NORFOLK

**REPLY BRIEF OF APPELLANT**

Jonathan P. Sheldon
SHELDON & FLOOD, PLC
10621 Jones Street
No. 301-A
Fairfax, VA 22030
703-691-8410
JSheldon@sfhdefense.com

*Counsel for Appellant*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

ARGUMENT .............................................................................................................1

CONCLUSION ..........................................................................................................8

## TABLE OF AUTHORITIES

### Cases

*United States v. Black*,
  707 F.3d 531 (4th Cir. 2013) ............................................................................. 5

*United States v. Hensley*,
  469 U.S. 221 (1985) ........................................................................................... 6

*United States v. Sokolow*,
  490 U.S. 1 (1989) ............................................................................................... 6

*United States v. Williams*,
  808 F.3d 238 (4th Cir. 2015) ............................................................................. 2

## ARGUMENT

The crux of this case is that a confidential informant told law enforcement that a specific target, not Howell, would be at the Aloft hotel trafficking drugs and that law enforcement may find other drug dealers there. The informant provided significant specific information about the target, but no one else. This is how the briefing, evidentiary hearing, and argument proceeded in the district court. Neither party suggested in the district court that when the confidential informant provided information about a specific target, that the informant was referring to Howell. In the lengthy and involved discussion with the judge at the hearing, the judge never suggested that the informant was referring to Howell. Somehow when the district court issued its opinion denying the motion to suppress the district court inexplicably and incorrectly conflated the target with Howell, finding reasonable suspicion largely because some of the facts about the target had similarities to Howell. And the district court also ignored the informant's errors and facts that weighed against reasonable suspicion.

Understandably the government would like the best of both arguments: arguing in this Court that perhaps the informant *had* misidentified its target and the target was Howell, Response Brief at 27, and that the other information also arose to reasonable suspicion. *Id.* Of course it was only the latter argument the government made in the district court. There is no evidence in the record that the

1

confidential informant was referring to Howell when the informant provided specific information about drug trafficking and the fact that the parties never discussed that as a possibility in the district court should foreclose that as an issue in this Court.

The government makes three errors or omissions in this Court. First, it takes innocent facts applicable to the public as a whole and, without any reason or context to make them suspicious, asks this Court to add them to the scale in favor of reasonable suspicion. Second, when the government tries to credit the informant's facts as applicable to Howell, it fails to acknowledge the informant's mistakes. Finally, while the government correctly urges this Court to look at the "totality of circumstances—the whole picture" it fails to do that itself – failing to note or consider those facts that weigh against reasonable suspicion.

The government leans heavily on innocent facts that, even in context, do not add weight to reasonable suspicion. The government finds compelling that Howell used a rental car with out-of-state license plates. The driver of a rental car does not have control over the license plates, so the out of state plates are an innocent fact. And the "overwhelming majority of rental car drivers . . . are innocent travelers with entirely legitimate purposes." *United States v. Williams*, 808 F.3d 238, 247 (4th Cir. 2015). Add to the fact that the government knew that Howell was from out of state and knew Howell was not trying to hide his identity (because they

2

already knew he had used his own name to register at the hotel), the purported reason rental cars are suspicious, and the rental car cannot possibly weigh in favor of reasonable suspicion. The government finds compelling for the analysis that Howell stayed in the Aloft hotel and for a "short stay." The problem is that the government's reason for the Aloft being suspicious, "common-areas spaces, because they fear robbers," Response Brief at 5, describes virtually every hotel in the United States. And because the average stay in a hotel is less than two nights,[1] the "short stay" fact is meaningless. The government finds important that Howell left with a "black duffel bag."[2] But again, virtually everyone leaving a hotel after staying the night would have a bag with them, Howell's was a mostly black with some white Puma brand gym bag that he carried openly and placed in plain view in the car. The opposite in fact would be true – travelling with no luggage or hiding the luggage in the car would be suspicious. Finally, despite the district court's obvious rejection, the government continues to beseech this Court to weigh Howell's legal and safe driving on the side of suspicion – putting all defendants and citizens in a catch-22, where one can either drive illegally or suspiciously, with nothing in-between.

---

[1] https://www.businesstravelnews.com/Lodging/Average-US-Hotel-Booking-Window-Length-of-Stay-Compress-in-November

[2] It seems in all these cases the defendant has a "black duffel bag" as though the word "duffel" and the color black is of some significance. It was a gym bag, white and black, calling it a "duffel" adds nothing.

3

The only evidence in favor of the confidential informant's reliability is the generalized testimony that he provided information over five years that led to convictions. JA 65. In this case, however, the informant was not reliable. The informant's main information, that a specific target would be at the hotel, was incorrect. At that point, there was little or no value to any of the other information provided by the informant because it was almost all about the target. The informant stated that the target would be driving a vehicle from a "Northern state," JA 94, but Howell's rental car had license plates from Georgia. So if one were to ponder whether Howell was the target, the informant was wrong again. The informant stated that the target would be accompanied by a female or the car driven by a female. Howell was with his sister, law enforcement knew he had a sister in town, his sister was not driving the car and his sister had her baby with her – wrong again.

Finally, the government fails to consider those facts that weigh against reasonable suspicion in its analysis. While certainly Howell's criminal history was relevant to the analysis, the government, like the district court, failed to consider the age of the criminal history or that the more recent investigations were exonerating - they resulted in no arrest, charges or convictions. The government puts heavy weight on the hotel and rental car, but the government, like the district court, fails to note or consider facts known to law enforcement that negates the

4

suspicion of both the hotel and car: Howell was visiting family from out of town and registered in the hotel under his own name.

Considering the facts in total, an erroneous informant stated that other drug dealers would be at the Aloft hotel and Howell, with an old criminal history of one drug conviction was at the hotel. All the other facts are either innocent or weigh against reasonable suspicion. The Government cannot meet its "*Terry* burden by patching together a set of innocent, suspicion-free facts, which cannot rationally be relied on to establish reasonable suspicion." *United States v. Black*, 707 F.3d 531, 539 (4th Cir. 2013).

<u>The Warrant</u>

The Georgia warrant was insufficient justification for a *Terry* stop and the government's reliance on the warrant was not in good faith – their actions and strained interpretation of their policies show that they knew they could have checked its status prior to detaining Howell and they knew that the warrant was non-extraditable.

First, it is clear based on the VCIN operating manual that the warrant could not be a basis for detention, but the officers claimed that they were not aware of this portion of the manual. JA 32 at n.4. Second, detective Beha's interpretation of the portion of the manual he did read seems strained to incredulity. The policy clearly stated to confirm the alleged outstanding warrant if the person is someone

5

who is "within custody or with whom they are in contact." JA 78. When detective Beha was asked why he did not confirm the warrant once he discovered the warrant and was in contact with Howell, with hours to waste, he claimed that in contact meant the "person cannot leave." JA 103. But a person who "cannot leave" is in custody, and the policy allows the officer to check on the warrant if the person is in custody *or* is "in contact" with the officer – that is, Beha's interpretation of the policy is pretextual and not supported by common sense or the plain reading of the policy.

The government claims that *United States v. Hensley*, 469 U.S. 221 (1985) and *United States v. Sokolow*, 490 U.S. 1 (1989) support the *Terry* stop because those cases stand for the proposition that officers are not required to use the least intrusive means to detain and investigate a suspect. Both cases support Howell's argument that the warrant and stop were not justified in his case.

In *Hensley*, an informant involved in a robbery told the police that Hensley was also involved. The police issued a "wanted flyer" for Hensley providing some details of the robbery and asking other police departments to hold Hensley if found. In a neighboring town, police saw Hensley driving away in a car and stopped him and saw a gun in plain view. Hensley challenged the stop arguing that the lack of a warrant and lack of knowledge of specifics by the police rendered the stop a violation of the Fourth Amendment. The Court found that the stop, reliance

6

on the other police department's flyer, and brief detention to under the circumstances was reasonable.

In *Sokolow*, a DEA agent knew six specific and suspicious facts about Sokolow, leading him to suspect that Sokolow was trafficking drugs at an airport. 490 U.S. at 3. The agent detained Sokolow as he was about to get into a taxi and found drugs. Sokolow argued that the police should have used a less restrictive means – that they should have spoken with him, but not detained him. The Supreme Court held that the question was simply the reasonableness of the officer's decision to detain Sokolow, and the availability of other techniques did not make this stop unreasonable because Sokolow "was about to get into a taxicab." *Id.* at 11.

*Hensley* and *Sokolow* stand for the unremarkable proposition that an officer's *Terry* stop should be evaluated for reasonableness based on the totality of the circumstances. In both of those cases the police encountered their suspect when he was just about to drive away from the police. In both cases, the brief detention was reasonable. In this case, on the other hand, the police had ample reason to believe that the Georgia warrant provided no basis to detain Howell as well as ample opportunity to inquire about the warrant prior to detaining Howell.

7

This court should reverse the erroneous ruling of the trial court and grant Howell's motion to suppress, overturn his conviction and direct the district court to dismiss the indictments.

## CONCLUSION

For the foregoing reasons, Appellant Xavier Howell requests that this Court reverse the judgment and order of the district court and remand the case to the district court with instructions to dismiss the indictments or in the alternative to grant him a new trial.

Howell requests the opportunity to present oral argument before the Court on the issues in his brief.

Respectfully submitted,

/s/ Jonathan Sheldon
Jonathan P. Sheldon, VSB No. 66726
*Counsel for Xavier Howell*
Sheldon & Flood, P.L.C.
10621 Jones Street, #301A
Fairfax, Virginia 22030-5165
Tel. (703) 691-8410
Fax (703) 251-0610
E-mail: JSheldon@SFHdefense.com

Dated: March 3, 2022