PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4634

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

XAVIER HOWELL, a/k/a X, a/k/a Xavier Allyson Howell,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. John A. Gibney, Jr., Senior District Judge. (2:20-cr-00011-JAG-LRL-1)

Argued: May 5, 2023                                            Decided: June 22, 2023

Before NIEMEYER and HEYTENS, Circuit Judges, and Max O. COGBURN, Jr., United States District Judge for the Western District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Heytens and Judge Cogburn joined.

**ARGUED:** Jonathan P. Sheldon, SHELDON & FLOOD, PLC, Fairfax, Virginia, for Appellant. Amanda L. Cheney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:** Jessica D. Aber, United States Attorney, Aidan Taft Grano-Mickelsen, Assistant United States Attorney, Richmond, Virginia, Andrew Bosse, Assistant United States Attorney, Amanda Turner, Assistant United States Attorney, John F. Butler, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

Suspecting that Xavier Howell was engaged in drug-trafficking activity, law enforcement officers in Chesapeake, Virginia, stopped the vehicle he was driving to investigate. After a drug dog alerted to the presence of drugs, the officers searched the vehicle and recovered methamphetamine and related evidence.

After Howell was charged with drug trafficking offenses, he filed a motion to suppress the evidence recovered from his vehicle (and later from his apartment), contending (1) that the officers did not have a reasonable suspicion to make the stop and (2) that, in any event, they unduly prolonged the stop — all in violation of his Fourth Amendment rights. The district court denied his motion, and, for the reasons given herein, we affirm.

I

During September 2019, Detective Joseph Beha and Detective Joseph Milewczik of the Chesapeake Police Department were investigating drug trafficking in Chesapeake. On September 26, they received a tip from a confidential informant that an out-of-town target of their investigation would be traveling to Chesapeake to traffic in drugs. The informant reported that the target would be meeting with other drug dealers at the Aloft hotel and would be staying there overnight. The target would be driving a dark-colored or black rental SUV with out-of-state tags from a northern state and would be accompanied by an unknown African American female.

2

The detectives took the tip seriously, as the informant had, for some five years, provided accurate information to law enforcement that had led to both federal and state arrests and convictions. Also, Detective Beha knew that the Aloft hotel was preferred by drug dealers as a place to meet and stay, as he had personally been involved in multiple prior drug-related arrests and seizures at the hotel.

Accordingly, Detectives Beha and Milewczik conducted surveillance of the hotel, beginning at 7:00 a.m. the next morning, September 27, 2019. When, by approximately 10:00 a.m., they had seen no vehicle matching the informant's description, they went inside the hotel to check the guest register to see if the target's name was on it or if other drug dealers' names with whom they were familiar were on it. While they did not find the target's name on the register, they did find the names of two others who they believed were involved in drug trafficking, one of whom was Xavier Howell.

The detectives knew Howell from an earlier drug-trafficking investigation that had begun in 2014. As part of that investigation, officers made a controlled purchase of illegal drugs from a business in Portsmouth, Virginia, of which Howell had been identified as a "director." At the time, an informant also told officers that he had personally seen Howell in possession of drugs. But Howell was not then prosecuted. Detective Beha was also aware that Howell had been arrested in Virginia in 2008 for drug trafficking, which resulted in his pleading guilty to possession with intent to distribute. Finally, Detective Beha knew of Howell's prior arrests in three other states. Howell was, therefore, on Detective Beha's radar during the current 2019 investigation. Indeed, as Detective Beha testified, "[Howell's] photograph ha[d] been in front of my and my partner's desk as part of a big

3

board [used in the] ongoing criminal conspiracy investigation," as were pictures of other targets. And Detective Beha had also been tracking Howell on social media.

Upon seeing Howell's name on the hotel register, Detective Beha ran a criminal history inquiry for Howell in the Virginia Criminal Information Network/National Crime Information Center (VCIN/NCIC) database and discovered that Howell had an outstanding arrest warrant from Georgia for failure to appear. That search, however, did not indicate whether the warrant was extraditable, such that an officer in another state could act on it.

Later that morning, shortly before noon, the detectives observed a black Cadillac SUV pull up to the front of the hotel. The vehicle had Georgia plates and had a small sticker indicating to Detective Beha that it was a rental vehicle. When the driver exited, Detective Beha immediately recognized that it was Howell. As Detective Beha later testified, "I was very familiar with him." Howell entered the hotel, while an unidentified African American female exited the front passenger side and stood outside the vehicle, waiting for Howell to return. About ten minutes later, Howell returned with a small duffel bag and placed it in the vehicle. Both Howell and the female then got back in the vehicle and drove away.

As Detectives Beha and Milewczik followed the vehicle in their unmarked vehicle, they contacted a nearby traffic enforcement officer, Kenneth Byrd, to update him on the situation. They also informed dispatch of the potential need for a K-9 unit. As Detective Beha followed the black SUV, he observed that Howell was driving "in an extremely cautious manner" — driving under the speed limit and giving unusually early turn signals — which Beha interpreted to suggest that Howell was attempting to avoid drawing

4

attention to himself. Detective Beha requested that Officer Byrd conduct a stop, which Byrd did. Officer Byrd pulled Howell over at 12:06 p.m. and told Howell (as a ruse) that there was some mismatch between the vehicle and its license plate. Officer Byrd acknowledged later, however, that the real reason he pulled Howell over was in furtherance of the drug-trafficking investigation and because of the outstanding arrest warrant. He testified that he used the ruse in an attempt to forestall Howell's fleeing.

After Officer Byrd obtained Howell's driver's license and registration, he returned to his vehicle and performed an additional VCIN/NCIC inquiry, which confirmed that Howell had an outstanding arrest warrant. The response to the inquiry, however, also indicated that the warrant was non-extraditable. Around the time that Officer Byrd was receiving this information, K-9 Officer C.J. Rombs and his trained drug dog arrived on the scene — at 12:11 p.m. — in order to conduct an open-air dog sniff of Howell's vehicle. After brief conversations with the other officers, the female passenger, and Howell, and after removing Howell and the female passenger from the vehicle, Officer Rombs had the dog conduct the sniff. Within 30 seconds, the dog alerted to the odor of illegal drugs. Based on that alert, Officer Rombs allowed the dog to search the interior of the vehicle, and the dog alerted to containers in the back of the vehicle — a baby diaper bag, a black duffel bag, and a United States Postal Service mailing box. Following a search of the vehicle and the containers, the officers recovered approximately two kilograms of methamphetamine, cell phones, and incriminating paperwork. The paperwork led the officers to an apartment that Howell used, and after obtaining search warrants for the

5

apartment and the cell phones, the officers recovered additional drugs and incriminating messages indicative of a drug-trafficking conspiracy.

After Howell was charged with conspiracy to traffic in illegal drugs, in violation of 21 U.S.C. § 846, and possession of illegal drugs with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1), he filed a motion to suppress the evidence obtained from the September 27, 2019 traffic stop, as well as evidence constituting the fruits of that search, arguing that the officers lacked reasonable suspicion for the stop and unlawfully extended its duration to allow time for the K-9 officer to arrive.

The district court conducted an evidentiary hearing on the motion to suppress and then ruled that the officers had a reasonable suspicion of drug trafficking to justify the stop and that the stop was not unlawfully prolonged. Accordingly, it denied Howell's motion.

Before trial, the government filed a superseding indictment that added a count charging Howell with conspiracy to launder money, in violation of 18 U.S.C. § 1956(h). Following a bench trial, the district court convicted Howell on all charges and thereafter sentenced him to 360 months' imprisonment.

From the judgment entered on November 15, 2021, Howell filed this appeal, challenging only the district court's denial of his motion to suppress.

II

Howell contends first that the government lacked a reasonable suspicion of criminal activity to justify stopping him, maintaining that

> [Detective Beha's] testimony on the reliability of the informant was scant. Further, at the time the Government decided to detain Howell they knew that

6

> their informant was incorrect, and that his tip was wrong, because the specific target they were looking for was not at the Aloft hotel as the informant claimed. There was no suspicious drug activity observed at the hotel, a hotel where obviously the vast majority of customers were not involved in drug activity. So, the informant's tip was not reliable, he was "absolutely off the money in this particular case."

(Quoting the district court). Howell argues that "[t]he only information added to Howell's past [criminal record] that still stood — that could conceivably be considered as both relevant and suspicious . . . at the time law enforcement detained Howell was that Howell was driving a rental car and staying at the Aloft hotel." Howell thus contends that the district court "made a crucial mistake when it found reasonable suspicion because it credited and relied on the informant's tip regarding 'a suspected drug trafficker' who would be driving a black rental car with out of state plates and a woman would accompany the suspect at the Aloft hotel." That was a mistake, Howell argues, because the confidential informant was wrong — "[t]hat target never showed up."

The applicable legal principles are not disputed. "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *see also* U.S. Const. amend. IV. "Since *Terry v. Ohio*, 392 U.S. 1 (1968), a 'reasonable suspicion' of criminal activity has justified an officer's brief stop or detention of [a] suspect sufficient to permit the officer to allay the suspicion." *United States v. Mason*, 628 F.3d 123, 128 (4th Cir. 2010). Officers have "reasonable suspicion" when they can point "to specific and articulable facts which, taken together with rational inferences from those facts, evince more than an inchoate and unparticularized

7

suspicion or hunch of criminal activity." *Id.* (quoting *United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008)). This standard "is not readily . . . reduced to a neat set of legal rules," and therefore in assessing reasonable suspicion, courts look to the totality of the circumstances. *Id.* (quoting *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004)).

Unremarkably, we review the district court's legal conclusions, including its determination of reasonable suspicion, *de novo*, and we review its factual findings for clear error, construing the facts in the light most favorable to the government since it was the prevailing party below. *See United States v. Drakeford*, 992 F.3d 255, 262 (4th Cir. 2021).

In this case, Detective Beha instructed Officer Byrd to conduct a stop of Howell's vehicle based on Beha's suspicion that Howell was engaged in drug-trafficking activity. As he explained to the district court, his suspicion was based on an aggregation of information. *First*, he related how he had received information from a reliable informant that a target of his ongoing drug-trafficking investigation would be meeting other drug dealers at the Aloft hotel and that the target would be driving a specific vehicle and be accompanied by an African American female. While the vehicle on which Detective Beha eventually focused did match the reported description in substantial degree (although it had Georgia plates, rather than plates from a northern state), the driver of the vehicle was not the target, but was Howell. Detective Beha discovered that Howell was registered at the hotel where a meeting of drug dealers was expected. Those facts were connected because Detective Beha understood Howell to be a person who might be involved in drug-trafficking activities. Thus, when Howell appeared in the black SUV that matched the informant's description and Howell had been registered at the hotel, which was a venue

8

associated with drug trafficking, Detective Beha's suspicion arose that Howell was currently involved in drug-trafficking activities.

*Second*, Detective Beha's historical knowledge of Howell was important for this suspicion. Howell had, in 2014, been a "director" of a business that sold illegal drugs during a controlled buy, and an informant at the time told officers that he saw Howell in possession of illegal drugs. Howell had also been arrested in 2008 for drug trafficking, pleading guilty to the offense of possession with intent to distribute. And Howell had been arrested three times in other states. Moreover, before September 2019 and the events of this case, Howell had continued to be a specific target of Detective Beha's drug-trafficking investigation in Chesapeake, as demonstrated by Howell's picture being on the board displaying potential targets in the investigation. Thus, to Detective Beha, Howell was not just an innocent citizen who had arrived in a black SUV — he was a person of long-standing interest with respect to drug trafficking. As such, when Detective Beha saw Howell arrive at a location where a drug dealers' meeting was anticipated, Beha reasonably suspected that Howell was currently engaged in drug trafficking.

*Third*, Detective Beha knew that the Aloft hotel was a location that drug dealers preferred, as he had made multiple drug-trafficking arrests and seizures of drugs there. He explained that the hotel's design made it a preferred venue because drug dealers could engage with each other in common areas, rather than in bedrooms, which drug dealers sought to avoid.

*Finally*, contributing to Detective Beha's suspicion of Howell was Howell's conduct in driving his vehicle. Beha found it meaningful that when he followed Howell in an

9

unmarked car as Howell was driving, Howell seemed to be driving in an overly cautious manner, so as to avoid drawing attention to his vehicle.

In the totality of the circumstances as articulated by Detective Beha, we conclude that he had a reasonable suspicion that criminal activity was afoot when he asked Officer Byrd to make the stop. The fact that some of the confidential informant's information proved to be erroneous did not preclude the officers from relying on other information that had been given them by the informant. *See Illinois v. Gates*, 462 U.S. 213, 245 n.14 (1983) (rejecting the proposition that one inaccuracy in an anonymous informant's letter undermined the probative value of the entire tip); *see also United States v. Harris*, 39 F.3d 1262, 1269 (4th Cir. 1994) ("Information of criminal activity given by a known reliable informant is enough to sustain a *Terry* stop"). Indeed, even with respect to the erroneous information — that the driver was Howell rather than the expected target — the fact that the target and other drug dealers were expected to meet at the Aloft hotel and that one of them would be driving a black SUV was still useful. Indeed, such a meeting between the target and Howell may have occurred during the night long before Detectives Beha and Milewczik began their surveillance.

While Howell's criminal history taken alone would not have created a reasonable suspicion of current criminal activity, it surely was relevant in connection with the anticipated meeting of drug dealers. *See United States v. Foster*, 634 F.3d 243, 246–47 (4th Cir. 2011) (noting that criminal history can be a relevant factor when paired with "more 'concrete factors' to demonstrate that there was a reasonable suspicion of current criminal activity" (quoting *United States v. Sprinkle*, 106 F.3d 613, 617 (4th Cir. 1997))).

10

And finally, while Detective Beha's knowledge that the Aloft hotel was a preferred venue of drug dealers would not be sufficient, taken alone, *see Illinois v. Wardlow*, 528 U.S. 119, 124 (2000), it contributed to his assessment, especially since he had the information from his own personal experience. It also tended to confirm the information that he received from the confidential informant that there would be a meeting of drug dealers at that hotel.

When all of these factors come together at a specific time — as they did here — they support a reasonable suspicion of ongoing criminal activity, justifying a brief stop to allay that suspicion. In this case, of course, the investigatory stop did not allay that suspicion but confirmed it. Shortly after the stop, a drug dog alerted to the presence of drugs in Howell's vehicle, leading to the recovery of drugs and other evidence used in this case.

### III

Howell also contends that even if the officers had reasonable suspicion to justify the stop, the stop was unlawfully prolonged in order to allow the K-9 unit to arrive and the drug-dog sniff to occur.

It is undisputed that the stop was initiated at 12:06 p.m.; that the K-9 officer, along with his dog, arrived at the scene five minutes later, at 12:11 p.m.; that the K-9 officer engaged in conversations and removed Howell and his passenger from the vehicle during the next five minutes; that the dog sniff took place at 12:16 or 12:17 p.m.; and that the dog

11

alerted to the presence of drugs within 30 seconds. Thus, by 12:17 p.m., 11 minutes after the initiation of the stop, the officers had probable cause to search the vehicle.

The stop in this case was a *Terry* stop, which need be justified by only reasonable suspicion of criminal activity, and the permissible length of such a stop is determined by the "mission" justifying the stop. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). "In assessing whether a detention is too long in duration to be justified as an investigative stop," it is "appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). And, of course, the "[a]uthority for the seizure" ends when the "tasks tied" to the initial stop "are — or reasonably should have been — completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).

"The maximum acceptable length of a routine traffic stop cannot be stated with mathematical precision," but rather "the appropriate constitutional inquiry is whether the detention lasted longer than was necessary, given its purpose." *United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008). Moreover, even if an individual is stopped for a routine traffic violation, the use of a trained drug dog to conduct an open-air sniff *during* that traffic stop does not violate the Fourth Amendment. *Caballes*, 543 U.S. at 409. But absent reasonable suspicion to independently justify the dog sniff, police may not *extend* a routine traffic stop in order to conduct a dog sniff. *Rodriguez*, 575 U.S. at 354–57; *see also United States v. Miller*, 54 F.4th 219, 228 (4th Cir. 2022). The stop at issue in this case, however, was not a routine traffic stop. Rather, the primary purpose of the stop was to allay suspicion of Howell's participation in a possible ongoing drug-trafficking conspiracy. And because

we conclude that the initial stop was supported by reasonable suspicion, we readily conclude that the arrival of the K-9 officer within 5 minutes of the stop and the completion of the dog sniff within 10 to 11 minutes did not amount to an illegal prolonging of the stop. *See, e.g.*, *United States v. Vaughan*, 700 F.3d 705, 712 (4th Cir. 2012) (confirming the permissibility of a dog sniff that occurred 16 minutes after the initial traffic stop and 7 to 10 minutes after reasonable suspicion first developed); *Mason*, 628 F.3d at 126–30 (upholding a 15-minute detention on the basis that a reasonable suspicion of drug trafficking permitted briefly extending a traffic stop until the drug-sniffing dog arrived); *Branch*, 537 F.3d at 339 (upholding a 30-minute detention that began with a traffic stop and then gave rise to a reasonable suspicion of drug activity sufficient to justify continued detention until the dog sniff occurred). Here, the mission of the stop was to investigate potential drug-trafficking activity, and there is no evidence in the record to suggest that the officers failed to "diligently pursue[]" their investigation to confirm or allay that suspicion. *Sharpe*, 470 U.S. at 686.

\*   \*   \*

In sum, we conclude that the Chesapeake law enforcement officers had a reasonable suspicion to justify stopping Howell and that, after stopping him, they diligently engaged in what was necessary to allay their suspicion and therefore did not unnecessarily prolong the stop. We thus affirm the district court's denial of Howell's motion to suppress and affirm the judgment.

AFFIRMED